UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

CHARLES STERGIOS, )
 )
 )
v. ) Criminal  No. 04-110-P-S
 )
 ) Civil No.  06-182-P-S
UNITED STATES OF AMERICA, )
 )
 )

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

 Charles Stergios, serving three seventy-five month concurrent sentences on his guilty-plea convictions for wire, mail, and bank fraud, has filed a 28 U.S.C. § 2255 motion. (Docket No. 1.)  Stergios did take a direct appeal which was rebuffed by the First Circuit Court of Appeals.  In his 28 U.S.C. § 2255 motion Stergios presses four grounds.  The United States has filed a responsive motion seeking summary dismissal.  (Docket No. 14.)  I recommend that the Court deny Stergios relief for the following reasons.

*Discussion*

 Stergios is entitled to  28 U.S.C. § 2255 relief only if his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack"  28 U.S.C. § 2255 ¶ 1. With respect to this Court's review of Stergios's § 2255 claims, summary dismissal is appropriate if his motion: "'(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" United States v. DiCarlo, 575 F.2d 952, 954 (1978)(quoting Moran v. Hogan, 494 F.2d 1220,

1222 (1st Cir.1974)). "Thus, the petition is subject to dismissal, without an evidentiary hearing, if the grounds for relief either are not cognizable under section 2255 or amount to mere 'bald' assertions without sufficiently particular and supportive allegations of fact." Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992) (citing Moran, 494 F.2d at 1222).

Furthermore:

> "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Reed v. Farley, 512 U.S. 339, 354 (1994) (internal citation omitted). The principles of finality, federalism, and comity inform the scope of habeas review. Sanna v. Dipaolo, 265 F.3d 1, 7 (1st Cir.2001) (citing Brecht v. Abrahamson, 507 U.S. 619, 633-35 (1993); Teague v. Lane, 489 U.S. 288, 308-10 (1989)). Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence. Bousley v. United States, 523 U.S. 614, 622 (1998).

Berthoff v. United States, 308 F.3d 124, 127 -28 (1st Cir. 2002).

Stergios does have one ineffective assistance claim and he does suggest that his attorney was responsible for not raising two of his grounds on direct appeal.  The First Circuit summarizes a § 2255 movant's Strickland v. Washington, 466 U.S. 668 (1984) burden as follows:

> An ineffective assistance claim requires the defendant-who bears the burden of proof, Scarpa v. DuBois, 38 F.3d 1, 8-9 (1st Cir.1994)-to show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's failures, the outcome would likely have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984); Cofske v. United States, 290 F.3d 437, 441 (1st Cir.2002)

Cirilo-Munoz v. United States, 404 F.3d 527, 530 (1st Cir. 2005).

**1.      *Alleged Threats by the Assistant United States Attorney***

In his first ground Stergios complains that the Assistant United States Attorney (AUSA) threatened Stergios, in conjunction with a proffer, that if he did not plead guilty the Government would continue to indict him.  As the United States points out: "It is a bedrock principle that, under ordinary circumstances, the voluntariness of a guilty plea can be questioned on collateral review under 28 U.S.C. § 2255 only if, and to the extent that, the plea has been challenged on direct appeal." Oakes v. United States, 400 F.3d 92, 95 (1st Cir. 2005) (citing Bousley v. United States, 523 U.S. 614, 621 (1998)). Accordingly, Stergios's first claim is deemed procedurally defaulted and he can proceed with his claim only if he can demonstrate either "cause for the default and actual prejudice resulting from it" or "that he is actually innocent of the offense of conviction." Id. (citing Bousley, 523 U.S. at 622-23).

In his form motion Stergios explains that he did not raise this ground on his direct appeal because his attorney wanted to press an ex post facto argument.  If this is meant to plead cause for his procedural default of this claim, it falls far short of meeting Stergios's burden with respect to demonstrating, under Strickland, that counsel's performance fell below an objective standard of reasonableness and that the outcome would have been different if counsel had performed adequately. See Cirilo-Munoz, 404 F.3d at 530. Stergios's glancing reference to counsel's decision to press only the ex post facto ground on appeal does not satisfy his burden to provide the court with "sufficiently particular and supportive allegations of fact," either with respect to his underlying 28 U.S.C. § 2255 claim or any efforts to overcome his procedural default. See David v. United States, 134 F.3d 470, 478 (1st Cir. 1998); Barrett, 965 F.2d at  1186.  This deficiency is especially

problematic in light of the fact that Stergios was asked three times during the change of plea hearing whether there were promises or threats made that induced his waiver of indictment and plea of guilty and Stergios three times responded that there was no such inducements to his plea. (Plea Hearing Tr. at 14, 22, 28.) An even more obvious flaw in Stergios's first ground is that all Stergios argues in this ground is that the Government informed him that it would proceed with an indictment if he did not plead guilty; without more, this is well within the bounds of fair prosecutorial play, see United States v. Yeje-Cabrera, 430 F.3d 1, 24 (1st Cir. 2005).

### 2.      *Attorney's Failure to Seek Withdrawal of Stergios's Guilty Plea*

In his second 28 U.S.C. § 2255 ground, Stergios asserts that his attorney failed to attempt to withdraw Stergios's guilty plea even though this court "offered" to withdraw the plea and Stergios (allegedly) told his attorney that he did want to withdraw the plea. As an ineffective assistance complaint, this is not a claim that necessarily had to have been raised on direct appeal to preserve 28 U.S.C. § 2255 review.  See Massaro v. United States, 538 U.S. 500, 509 (2003).

In his 28 U.S.C. § 2255 form motion Stergios has not attempted to explain to this court on what basis counsel should have argued for the withdrawal of the plea.  However, the thrust of what Stergios imagines is the basis for this claim is rather obvious from reading the transcripts of the change of plea hearing, the pre-sentence conference, the sentencing memoranda, and the sentencing proceedings.[1]

---

[1]      The United States seeks summary dismissal of this claim on the grounds that Stergios does not allege "sufficient particularized facts to support it." (Mot. Dismiss at 18.)  In his form motion Stergios does indicate that he told his attorney that he wanted to withdraw the plea and it is apparent that the issue was so palpable that counsel must have identified the issue during the course of representing Stergios.

### The information

The sentencing allegations in Stergios's information were that he "intended to inflict on his victims losses of more than $200,000, U.S.S.G. § 2B1.1(b)(1)(g)" and that he "victimized more than 50 persons, U.S.S.G. § 2B1.1(b)(2)(B)." (Crim. No. 04-110-P-S, Docket No. 2 at 5.)

### The plea agreement

The plea agreement between Stergios and the Government included the following provisions:

> 2. <u>Agreement Regarding Sentencing</u>:  The parties agree to take the following positions with respect to sentencing in this case:
> A. that the 2003 Edition of the United States Sentencing Guidelines applies to this case;
> B. that pursuant to U.S.C.G. § 3D1.2, the three counts in the Information form one group of closely related counts because they involve substantially the same harm, the same victims, and connected acts, or transactions;
> C.  that pursuant to U.S.S.G. § 2B1.1(a), defendant's base offense level is 7 because the defendant has been convicted of an offense referenced to this guideline, and because all three of the offenses of which the defendant has been convicted have statutory maximum terms of imprisonment of 20 years or more;
> D. that pursuant to U.S.S.G. § 2B1.1(b)(1)(G), the defendant's base offense level is increased by 12 levels because the loss he intended to inflict on his victims was more than $200,000;
> E. that pursuant to U.S.S.G. § 2B1.1(b)(2)(B), defendant's base offense level is increased by 4 levels because his offenses involved more than 50 victims;
> F. the Government agrees not to seek an increase in the defendant's offense level pursuant to U.S.S.G. § 2B1.1(b)(8) on either the grounds that the defendant relocated his fraudulent scheme to another jurisdiction (Tennessee) to evade law enforcement or that his offenses involved sophisticated means;
> G. the Government agrees not to seek an upward departure pursuant to U.S.S.G. § 4A1.1 on the ground that the defendant's criminal history category substantially under-represents the seriousness of his criminal history or the likelihood that he will commit other crimes;
> H. the Government agrees to recommend that the Court find that the Defendant has accepted responsibility for the offense(s) of conviction

in the above-captioned Information, and that the Court should reduce
by three (3) levels Defendant's Adjusted Offense Level under
U.S.S.G. § 3E1.1.  The Government reserves the right not to
recommend a reduction under U.S.S.G. § 3E1.1 if, at any time
between the execution of this Agreement and sentencing defendant (a)
fails to admit a complete factual basis for the plea; (b) fails to
truthfully admit his conduct in the offense of conviction; (c) engages
in conduct which results in an adjustment under U.S.S.G. § 3C1.1; or
(d) falsely denies or frivolously contests relevant conduct for which
defendant is accountable under U.S.S.G. § 3B1.3.  Defendant
understands that he may not withdraw the guilty plea if, for any
reasons listed above, the Government does not recommend that he
receive a reduction in Offense level for acceptance of responsibility;
I. the parties further agree and understand that, subject to the terms of
this Agreement, the parties may petition the Court for the imposition
of any lawful sentence.  The parties expressly agree and understand
that the Court is not bound by the above stipulations and, should the
Court reject any of the recommendations of the parties, the defendant
will not thereby be permitted to withdraw his plea of guilty.  The
parties agree and understand that the Court has the discretion to
impose any lawful sentence.
….

13. <u>Blakely waiver.</u>  The defendant is familiar with the Supreme Court's
decision in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (June 24, 2004).
Notwithstanding that decision, the defendant agrees as follows:
 A. to waive all constitutional challenges to the validity of the
United States Sentencing Guidelines;
 B. to have his sentence determined pursuant to the United
States Sentencing Guidelines;
 C. to waive any claim he might have that the facts that
determine his Guideline sentencing range as recommended in
paragraph 2 above (including, but not limited to, relevant conduct,
facts that support any offense characteristic, specific offender
enhancement, other upward adjustment, upward departure,
grouping, cross-reference or criminal history category) should be
alleged in the indictment and found by a jury beyond a reasonable
doubt;
 D. the facts used to determine his Guideline sentencing range
as recommended in paragraph 2 above will be found by the court at
sentencing by a preponderance of the evidence;
 E. that the sentencing court may consider any reliable
evidence, including hearsay.

(<u>Id.</u>, Docket No. 3 at 2-4, 8-9.)

6

*Prosecution Version*

Attached to the Prosecution Version is a twenty-four page table of fraudulent transactions broken out by victim name and listing the items involved in the transaction, the amount of intended loss, and the amount of actual loss. (Id., Docket No. 4, Attach. 1.) This table lists 322[2] victims and indicates that there was $421,263.79 in intended loss and $120,937.79 in actual loss.

*Change of plea*

Prior to the change of plea hearing, defense counsel requested a conference in chambers to explain that this was a case in which the plea agreement set forth an agreement and also specified what Blakely v. Washington, 542 U.S. 296 (2004) grounds were not waived. (Change of Plea Tr. at 2.) Counsel said she wanted to point out to the Court that "although it looks like he is pleading guilty to amounts over 400,000 instead of 200,000 and over 250 [victims] instead of 50, when he agrees to the factual basis of that I'm concerned that the Court will think that is what he is pleading guilty to because it looks like it is; however, it is really not." (Id. at 3.) Counsel specified that the Prosecution Version contained facts that went beyond what Stergios intended to admit. (Id.) The Assistant United States Attorney chimed in:

> I think the concern on the part of the defense is the prosecution version goes beyond that. To make it clear in the plea agreement, the parties have agreed to recommend that Mr. Stergios be held accountable for having victimized more than 50 people having inflicted more than $250,000 worth of loss. That is what is charged as sentencing allegations in the information, 50 victims and $250,000 in loss. The prosecution version does go beyond that. The prosecution version fairly and fully describes the extent of Mr. Stergios' activities as the government was able

---

[2]       This is my count of the victims listed on the table. The Government lists the number as 321 (Mot. Dismiss at 6) and that was the number referenced by this Court in its sentencing memorandum, United States v. Stergios, 370 F.Supp.2d 328, 329 -30 (D. Me. 2005), and during sentencing. (Sentencing Tr. at 76).

to understand them through its investigation and it is the government's intention to proffer all of that information, not to pick and choose amongst the victims.

(Id. at 4.)  This Court then explained:

> Let me be clear that I'm not getting involved in what you people agree to. I'm not permitted to and I'm not going to. If the defendant admits to the information, whether in the plea agreement or the prosecution version, absent any other agreement between counsel, I'm going to use it because it's an admission. And Blakely permits me to use it and I will not shut my eyes. If counsel wants to agree that these are the facts but he is not admitting them for Blakely purposes, then I will take that into account. I may honor it or I may not. If I don't, I will not let him plead. Right now all I see in the plea agreement is certain sentencing guideline agreements between the parties but it does not bind me. Correct?

(Id. at 4-5) (emphasis added).  The AUSA agreed that this was correct but reemphasized that there was a modified Blakely waiver which waived those rights "only to the extent of 50 victims and $200,000." (Id. at 5.)

During the change of plea hearing Stergios assured the court that he understood the charges contained in the information, had discussed the elements of the offenses and the possible penalties with defense counsel, and that he was pleading guilty to the three charges because he was in fact actually guilty.  (Id. at 15-16.)  After articulating the possible penalties Stergios faced, the Court explained his right to plead not guilty and the rights Stergios was giving up by pleading guilty.  (Id. at 17-19.)

The following exchange then took place:

> THE COURT: Mr. Frank [the AUSA], I'm looking at a Prosecution Version in this matter which I think is dated October 15.
> MR. FRANK: Yes, your Honor, signed by me.
> THE COURT: Does this contain a portion of the evidence the government would produce if this matter went to trial?
> MR. FRANK: It does your Honor.
> THE COURT: Am I correct, is there an agreement between the parties that though this evidence is contained in the Prosecution Version, the only

Blakely related evidence that the parties intend for the Court to use is that information contained at the end of the information?

MR. FRANK: Yes, your Honor as described in the sentencing enhancements that are pled in the information; yes, your Honor.

THE COURT: That is it as far as the parties are concerned?

MR. FRANK: Yes. The parties intend and understand that the defendant is only waiving his Blakely rights to have sentencing enhancements pleaded and proven beyond a reasonable doubt.

THE COURT: Is that right, Mr. O'Brien [one of Stergios's defense attorneys]?

MR. O'BRIEN: It is. He is admitting to facts sufficient to find that the scheme involved more than 50 victims and involved more than $200,000 in intended loss.

THE COURT: That agreement, although not contained in the plea agreement in this case, is an oral agreement between the parties; is that correct?

MR. FRANK: Your Honor, the parties endeavored to include it in paragraph 13 of the plea agreement which is a modified version of our standard Blakely waiver but we have also orally stated that understanding here in court.

MR. O'BRIEN: That's correct.

THE COURT: Mr. O'Brien, does your client contest anything contained in this prosecution version taken into account that understanding?

MR. O'BRIEN: No, your Honor.

Q. Is that right, Mr. Stergios?

A. Yes sir.

THE COURT: Mr. O'Brien, are you satisfied that the government could produce this evidence?

MR. O'BRIEN: Yes, your Honor.

THE COURT: That the evidence would be sufficient to convict your client of these three counts?

MR. O'BRIEN: Yes, your Honor.

THE COURT: All right, I find a factual basis to the guilty pleas to the crimes charged in this information.

….

THE COURT: Mr. Frank, there is a plea agreement in this matter, is there not?

MR. FRANK: There is.

THE COURT: That is the plea agreement signed by the government October 15 and the defendant apparently October 14; is that correct?

MR. FRANK: Yes, your Honor.

Q. Mr. Stergios, in this plea agreement on page 2, section number 2, you and the government agreed to certain sentencing guidelines. Do you understand that?

A. Yes sir.

Q. Those guidelines set forth recommendations or agreements of the parties as to how the guidelines should be computed in this matter. Do you understand that?

A. Yes sir.

Q. Do you understand those are not binding on this Court?

A. Correct.

Q. If I don't adopt that agreement I'm not going to permit you to withdraw your plea of guilty. Do you understand that?

A. Yes.

Q. I call your attention to 3(i). 3(i) says specifically that the Court is not bound by the above stipulations. Do you see that?

A. Yes sir.

Q. Is that your intent by this agreement?

A. Yes sir.

Q. I also want you to note in part 3 that you are subject, that you are giving up your right to appeal the guilty plea in this case. Do you understand that?

A. Yes sir.

Q. And in part 3(d) you are giving up your right to appeal any sentence of imprisonment that does not exceed the number of months provided for in offense level 23. Do you understand that?

A. Yes.

Q. And do you understand that you don't have to waive those rights of appeal?

A. Yes sir.

Q. Have you discussed those waivers with your counsel?

A. Yes sir.

Q. And it's your intent to proceed with those waivers?

A. Yes sir.

Q. I want you to understand that if in fact I determine to sentence you above offense level 23, you will in fact have a right of appeal. Do you understand that?

A. Yes sir.

Q. You are only giving it up if it is 23 and below. Do you understand that?

A. Yes.

Q. The additional waiver that you have with regard to Blakely, as set forth in this plea agreement and has been orally interpreted before me, indicates that you have only waived your Blakely rights with regard to the enhancements contained at the end of the information. Do you understand that?

A. Yes sir.

Q. I want you to understand that if I believe any additional Blakely rights have been waived I will give you an opportunity to withdraw your plea of guilty. Do you understand that?

A. Yes sir.

THE COURT: Is that your understanding, Mr. O'Brien?

10

MR. O'BRIEN: Yes, your Honor.

THE COURT: All as I have set forth?

MR. O'BRIEN: Yes your Honor.

THE COURT: Is that your understanding, Mr. Frank?

MR. FRANK: Yes, your Honor.

Q. I want you to know, Mr. Stergios, that you are not required to give up any Blakely rights; do you understand that?

A. Yes.

Q. Have you discussed this waiver that you are doing with your counsel?

A. Yes sir.

Q. Have they answered all of your questions?

A. Yes sir.

Q. Do you understand that you don't have to do it?

A. Yes sir.

Q. Is that your signature on this plea agreement?

A. Yes sir.

Q. Did you sign it voluntarily?

A. Yes sir.

Q. Did you read it before you signed it?

A. Yes sir.

Q. Did you understand everything in it before you signed it?

A. Yes sir.

Q. By signing it did you intend to agree to all its terms and conditions?

A. Yes sir.

Q. I want you to understand that with regard to your sentence, even at the offense level you have agreed to, let's assume I agree with that offense level, there is a broad range of sentence that applies at that offense level and your counsel and the government could make certain recommendations to me with regard to your sentence but I don't have to accept those recommendations. I want you to know that if I don't agree with the recommendations, I will not permit you to withdraw your plea of guilty. Do you understand?

A. Yes sir.

Q. The sentence in this case will be governed by applying the Sentencing Commission Guidelines. Have you and your attorney talked about how the Sentencing Commission Guidelines may affect your sentence?

A. Yes.

Q. I want you to understand that I can't determine your guideline sentence until after I have read your presentence investigation report and until after I have given your counsel and the government a chance to challenge what is in that report. Even after I determine what guideline sentence does apply in your case, I still have the right in some circumstances to impose a sentence on you that is either more severe or less severe than the sentence called for by the applicable guidelines. And under that circumstance, I also will not permit you to withdraw your plea of guilty. Do you understand?

A. Yes sir.

Q. I want you to understand that under normal circumstances you would
have the right to appeal any sentence I impose. As I just discussed with
you under this plea agreement, you are giving up your right to appeal in
this sentence under certain circumstances. Do you understand that?
A. Yes sir.

(Id. at 20-22.)  The court reserved decision on the acceptance of the plea agreement until

after a review of the Pre-sentence Investigation Report.  (Id. at 29.)

### Pre-sentence conference

A pre-sentence conference was held on March 15, 2005.  Discussion continued

concerning the plea agreement and its provision that Stergios would not be allowed to

withdraw his plea of guilty should the court reject the parties' stipulation.  (Sentencing Tr.

at 11 -16.)   Defense counsel argued that there were statements made during the plea

colloquy about the agreement on limiting the number of victims to 50 and the amount of

loss to $250,000 and that these statements were more ambiguous than the plain words of

the plea agreement.  (Id. at 12.)  The following exchange followed:

MS. DAVIS: …The Prosecution Version goes beyond that. I think it
makes clear that our intention in the plea agreement was to limit his
exposure.
     And then it says: The Court is saying this on page 5.
     If counsel wants to agree that these are the facts but he is not
admitting them for Blakely purposes, then I will take that into account.
     That is the facts because the Pros Version went beyond what he
was admitting. And then it says:
     I may honor it and I may not. If I don't, I will not let him plead.
And he did make a plea.
     So I think the Court was sort of agreeing with us.
THE COURT: What it sounds like to me. And I have not read this, are you
suggesting you want to withdraw your plea?
MS. DAVIS: Well I don't know, I didn't ask the client that. I was hoping
that since we had made this agreement and the Court did let him plead to it
that the Court would read it the way I'm reading it.
THE COURT: I don't see anything that I remember or that I've heard that
says I'm going to accept. I'm also not saying that I'm not going to accept
the parties' recommendation. I don't know what I'm going to do. I'm telling

12

> you right now, if the defendant wants to withdraw his plea because he's
> nervous and wants to withdraw his plea, I'll listen to the motion. I'm not
> telling you that I'm going to let him do it. I'm certainly going to listen but
> he had better do it soon because we have sentencing coming up.
> MS. DAVIS: I wanted the Court to be aware that we were hoping that the
> Court would look on this as a contract between the government and the
> defendant in making the plea agreement, and that the Court would honor it
> and –
> THE COURT: That's a good pitch to make. That's what the parties said.
> They made certain agreements in the plea agreement but they also said the
> Court is not bound to it. If you feel the Court is bound, make your pitch.
> You don't have to do it today but you can make it. If he wants to move to
> withdraw his plea, he is free to do that.

(Id. at 13-14.)  After a discussion of issues concerning acceptance of responsibility and

obstruction of justice, the Court explained:

> This is what we're going to do.
>     I don't know what I'm going to find for the amount of loss or the
> number of victims, I have no idea. I may or may not find what is set forth
> in the plea agreement, I just don't know. I'm willing to have an open mind
> on the subject.
>     With that in mind, and I don't feel bound by the plea agreement in
> terms of sentencing, I want to make that clear. If he wants to move to
> withdraw his plea, I want a motion by March 21 at noon and I'll deal with
> it. If that date goes by, I'm going to assume that it's waived.

(Id. at 16.)  No motion to withdraw the guilty plea was filed.

### Stergios's sentencing memorandum

In his sentencing memorandum Stergios again pressed his case for having the

Court sentence him according to the number of victims and amount of loss agreed to in

the plea agreement.  He summarized:

> The Plea Agreement in this case memorialized the understanding
> of the Government and the Defendant related to number of victims and
> amount of loss. Therein, it was agreed that the base offense level would be
> increased by 12 levels for over $200,000 in intended losses, and by 4
> levels because the offenses involved 50 or more victims. Officer Moody
> requests that the Court give the Defendant a 14 level upward adjustment
> for having over $400,000 in intended losses, and a 6 level upward
> adjustment for have 250 or more victims. See PSR, paragraphs 13-14.

> Assistant U.S. Attorney Halsey Frank has agreed that the $200,000 in losses and 50 victims should be used to determine the Guideline range. It is anticipated that AUSU Frank will continue to agree to these levels for sentencing purposes based on the fact that it was the bargain that was struck by the parties.

(Def.'s Sentencing Mem. at 8.)  Stergios then argued at some length as to why ordinary contract interpretation and principles of fairness counseled in his favor.  (Id. at 8-9.)  He also advanced an argument as to why, because of the ex post facto clause of the Constitution, the court should apply a Blakely- based plea agreement rather than sentence him under the Booker- informed discretion.  (Id. at 9-11.)  He concluded:

> This Court indicated in Chambers that if it did not accept a plea to 50 victims and $250,000 in losses, that it would not accept the guilty plea at all. As the Court noted: "I may honor it or I may not. If I don't, I will not let him plead." Plea Transcript, October 18, 2004 at 5. The Court later warned the Defendant that the plea agreement between the Defendant and the Government do not bind the Court at sentencing. Plea at 23-24.
> The Court gave the Defendant an opportunity to move to withdraw his plea. Mr. Stergios did not attempt withdrawal. Mr. Stergios wants to keep the deal he struck and is asking the Court to honor it. The Defendant had a reasonable expectation that this agreement would remain. We are asking the Court to allow the Defendant to keep the benefit of his bargain.

(Id. at 11-12.)

***Sentencing***

 Stergios's March 21, 2005, window for filing a motion to withdraw his guilty plea having been closed, the sentencing commenced on April 1, 2005.  The Court again made it clear that it was not bound by the plea agreement.  (Sentencing Tr. at 20, 34.)  It also reminded counsel:

> You will remember at the presentence conference in this case held some time ago, the Court raised both the issues of obstruction of justice and acceptance of responsibility with counsel, and told counsel specifically that the Court was considering both of those issues at that time. I specifically advised counsel that because I was raising those issues, and I believe in abundance of kindness, though I was not required to do so, I

gave the defendant an opportunity because of certain <u>Blakely</u> issues, which I don't think are valid, an opportunity to withdraw his plea. And the defendant did not engage or file any request to withdraw his plea. Now, counsel clearly cannot indicate to me that I had not raised those issues earlier. The record is replete with our discussion at the presentence conference that those issues were active issues in my mind.

(<u>Id.</u> at 35.)   The defense persisted in its efforts to persuade the court to use the plea

agreement as the yard-stick in determining the number of victims and the amount of loss.

(<u>Id.</u> at 70-72.)

The Court summed up:

In an abundance of caution, this Court has allowed the defendant to move to withdraw his plea in light of the intervening Booker decision. In other words, I have offered this defendant an opportunity to withdraw his plea of guilty and go to trial. He did not do so. Under these circumstances the Court does not believe that fairness or any other principle dictates that it must accept the sentencing recommendations set forth in the plea agreement and thereby disregard the Supreme Court <u>Booker</u> decision.

With regard to whether equity so requires, I think the plea agreement specifically contemplates that this Court might not accept the recommendation set forth in the plea agreement where it indicates specifically that if the Court does not accept those, the defendant would not be permitted to withdraw his plea as cited by Mr. Zerillo [one of Stergios's attorneys].

We are dealing with an individual who, though sentenced for less drugs than set forth in the plea agreement, had a number of other defendants who had already been sentenced in connection with a wide ranging conspiracy and the Court was merely attempting to keep all individuals being sentenced within the same basic range so that those who pled, or indicated they wanted the Court to accept a guilty plea, would not be disadvantaged by those that went to trial and were convicted.

Thus, I find by a preponderance of the evidence, based on the evidence set forth in the presentence report, that this defendant's fraud involved a total of 321 victims, at least, and I suspect there were substantially a greater number of victims than that, and at least $421,000 in losses.

It is my view that there would have been a substantially higher amount of losses if the police had not intervened since they were sending packages back or preventing shipment to the defendant during the later stages of the investigation.

This Court will, therefore, apply a 6 level enhancement required under guideline 2B1.1(b)(2)(C). And a 14 level enhancement required in sentencing guideline section 2B1.1(b)(1)(H).

Now, with regard to the issue of acceptance of responsibility and obstruction of justice, at the pretrial conference this Court notified both sides that it was contemplating the application of obstruction of justice enhancement.

In addition, this Court notified both sides that it was concerned that the defendant, in spite of his guilty plea did not qualify for acceptance of responsibility adjustment under guideline 3E1.1.

Both the government and the defendant have filed sentencing memoranda which addressed these issues and I have reviewed all of the documents as well as a substantial portion of the supporting case law. Having reviewed those memoranda, the case law as well as the presentence investigation report, this Court believes that the applicability of the obstruction of justice enhancement is a very close call, nonetheless, this Court ultimately finds that his failure to disclose the nature of his assets and/or to hide them does not fall squarely within the category of providing materially false information to a probation officer with respect to a presentence or other investigation for the Court. Rather, this conduct can more readily be described as, quote, providing incomplete or misleading information not amounting to a material false [statement] in respect to presentence investigation.

For that reason this Court will not apply the obstruction of justice enhancement.

(Id. at 75-77.)  The Court then proceeded to articulate its conclusion that Stergios was not entitled to an acceptance of responsibility reduction because he had not "exhibited authentic remorse" and had attempted to conceal and dissipate his assets towards a goal of avoiding restitution.  (Id. at 78-79.)  The Court determined that, with a base offense level of 7, the amount of loss increased this level to 14 and the number of victims raised the ruler to a base offense level of 27.  (Recall that the plea agreement targeted a base offense level of 23.)  With a Criminal History Category of 1, the guideline range settled at 70 to 87 months.  (Id. at 79-80.)

***This Court's sentencing memorandum***

In its April 4, 2005, sentencing memorandum the Court addressed Stergios's

argument as follows:

On October 18, 2004, Defendant Charles Stergios appeared before the Court and pled guilty to a three count information charging him with wire fraud (18 U.S.C. § 1343), mail fraud (18 U.S.C. § 1341) and bank fraud (18 U.S.C. § 1344). Defendant's guilty plea was made pursuant to a plea agreement (Docket # 3). Under the terms of that plea agreement, the Government and the Defendant agreed to take certain positions with respect to the Guideline calculations for his offense. In relevant part, both sides stipulated that "pursuant to U.S.S.G. § 2B1.1(b)(1)(G), defendant's base offense level is increased by 12 levels because the loss he intended to inflict on his victims was more than $200,000" and "pursuant to U.S.S.G. § 2B1.1(b)(2)(B), defendant's base offense level is increased by 4 levels because his offense involved more than 50 victims." (Plea Agreement (Docket # 3) at 3.) In the course of his plea colloquy, the Defendant admitted the facts necessary to allow this Court to make the findings necessary to support these enhancements.

Notably, the plea agreement also explicitly states, "The parties expressly agree and understand that the Court is not bound by the [Guideline calculation] stipulations, and should the Court reject any of the recommendations of the parties, the defendant will not thereby be permitted to withdraw his plea of guilty." (Plea Agreement (Docket # 3) at 4.)

In fact, the presentence report ("PSR") found Stergios was eligible for a 14 level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(H) because the losses resulting from his fraud totaled over $421,000.00. In addition, the PSR identified 321 victims of the fraud allowing for a six level enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(C). Defendant now argues that … it would be unfair for the Court to adopt these larger enhancements recommended in the PSR since they exceed the enhancements that are listed in the plea agreement. Alternatively, Defendant argues that application of the enhancements listed in the PSR would be a violation of the Ex Post Facto Clause.

In support of this latter argument, Defendant essentially asserts that at the time of his guilty plea he was relying on this Court's interpretation of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). Under this interpretation, Defendant believed his Guideline range would be determined by only those facts to which he admitted during his plea colloquy. Thus, he mistakenly believed that this Court would not be able to increase his Guideline range by engaging in judicial fact-finding. However, since that time, the Supreme Court has issued its decision in <u>United States v. Booker</u>, --- U.S. ----, 125 S.Ct. 738 (2005), and thereby clarified how the

principles it announced in <u>Blakely</u> apply to the Guidelines. Under <u>Booker</u>, it is clear that this Court can and should engage in judicial fact finding in order to determine each defendant's Guideline range. However, following <u>Booker</u>, this sentencing range is not binding on the Court.

This Court is clearly bound to follow the Supreme Court's decision in <u>Booker</u>. In contrast, the terms of the Defendant's plea agreement clearly and explicitly do not bind the Court. In an abundance of caution, the Court has allowed the Defendant an opportunity to move to withdraw his plea in light of the intervening <u>Booker</u> decision. However, Defendant did not file a motion to withdraw. Under these circumstances, the Court does not believe that fairness or any other legal principle dictate that it must accept the sentencing recommendations laid out in the plea agreement and thereby disregard the <u>Booker</u> decision. Thus, finding by a preponderance of the evidence that Defendant's fraud involved a total of 321 victims and over $421,000.00 in losses, the Court will apply the 6 level enhancement required under U.S.S.G. § 2B1.1(b)(2)(C) and the 14 level enhancement required in U.S.S.G. § 2B1.1(b)(1)(H).

<u>United States v. Stergios</u>, 370 F.Supp.2d 328, 329 -30 (D. Me. 2005).

### *Direct appeal*

In his direct appeal Stergios pressed two grounds. One of these grounds was whether, not withstanding Stergios's plea agreement, the lower court correctly sentenced him based on the number of victims and loss amount specified in the table included with the Prosecution's Version. (<u>See</u> Civ. No. 06-182-P-S, Docket No. 14, Attach. 1 at 6.) As to this question, the First Circuit Court of Appeals concluded: "Defendant's sentence is affirmed essentially for the reasons stated in the district court's Sentencing Memorandum. In light of <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), the court gave defendant an opportunity to move to withdraw his plea, which he waived. Due process required no more." (Case No. 05-1599, Docket Entry Apr. 14, 2006.)

### *Viability of an ineffective assistance claim for not moving to withdraw the plea*

"The Sixth Amendment to the United States Constitution" the First Circuit Court of Appeals has opined, "guarantees,"

18

that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to
have the Assistance of Counsel for his defense." It is well settled that this
right to effective assistance of counsel attaches at all critical stages of the
trial, United States v. Wade, 388 U.S. 218 (1967), including at sentencing.
Gardner v. Florida, 430 U.S. 349, 358 (1977) (holding that "sentencing is
a critical stage of the criminal proceeding at which [defendant] is entitled
to the effective assistance of counsel").

      The touchstone for any ineffective assistance of counsel claim is
the two-part test laid down by the Supreme Court in Strickland v.
Washington, 466 U.S. 668 (1984).

      ….

      In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court applied
Strickland 's two-part test to ineffective assistance of counsel claims in the
guilty plea context. Id. at 58 ("We hold, therefore, that the two-part
Strickland v. Washington test applies to challenges to guilty pleas based
on ineffective assistance of counsel."). As the Hill Court explained, "[i]n
the context of guilty pleas, the first half of the Strickland v. Washington
test is nothing more than a restatement of the standard of attorney
competence already set forth in [other cases]. The second, or 'prejudice,'
requirement, on the other hand, focuses on whether counsel's
constitutionally ineffective performance affected the outcome of the plea
process." Id. at 58-59.

United States v. Colon-Torres, 382 F.3d 76, 85-86 (1st Cir. 2004). "Accordingly," even

if he can satisfy his burden vis-à-vis the performance prong, Stergios must demonstrate

"'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty

and would have insisted on going to trial.'"  Id. at 96 (quoting Strickland, 466 U.S. at 59).

    Although I disagree with the United States that the contours of Stergios's

ineffective assistance claim for not withdrawing the plea are not intelligible from the

record, I do agree that Stergios has absolutely failed to carry his burden as to this

ineffective assistance claim.  See Cirilo-Munoz, 404 F.3d at 530; David, 134 F.3d at 478;

Barrett, 965 F.2d at 1186.

    The Prosecution Version includes a table that lists 322 victims of his fraud and

sets forth detailed itemization of intended loss and actual loss.  Even if one were to take

Stergios at his word that he instructed counsel to withdraw his plea (which is a stretch

given his on the record assurances to the Court that he was aware of and in agreement with his attorneys' efforts), I have no record evidence to suggest that he would have elected to go to trial. Instead, what the record effuses is that defense counsel approached this case knowing that Stergios faced prosecution and sentencing for at least the number of victims and amount of loss reflected in the table appended to the Prosecution Version. Counsel was also juggling the implications of Blakely. There can be no dispute that counsel, in ironing out Paragraphs 2 and 13 excerpted above, achieved a plea agreement with the prosecution that was favorable to their client, and – when it became apparent that the Court did not consider itself bound by that agreement -- counsel advocated strenuously up through the conclusion of sentencing to have the Court conform its sentencing to that agreement. Even if Stergios did query counsel about the Court's offer to allow a motion to withdraw his plea, on the facts of this case I would have a hard time concluding that counsel was anything but effective in persuading their client that his best bet lay not in insisting on a trial but in pursuing the arguments that were pressed in the sentencing memorandum, through the sentencing proceeding, and on direct appeal. See, e.g., United States v. Sparrow, 371 F.3d 851 (3d Cir. 2004); Purdy v. United States, 208 F.3d 41, 44-45 (2d Cir. 2000).

3.      *Assistant United States Attorney's Alleged Misinformation during Sentencing*

In his third 28 U.S.C. § 2255 claim on his form petition, Stergios argues that the Assistant United States Attorney deceived the court at sentencing when he told the Court that Stergios lied about his co-defendant. Stergios 'explains' that a search done on the co-defendant's house found an item or items that were taken through scams and also that financial statements proved Stergios's co-defendant paid him his cut. It seems that

Stergios's theory is that on the facts of the case it was impermissible for the Government to challenge Stergios's claims that his co-defendant was more responsible for the fraud than was Stergios. Unlike his other three claims, in his form motion Stergios does not indicate why he did not raise this prosecutorial misconduct claim on direct appeal.

In a late-filed addendum to his 28 U.S.C. § 2255 motion Stergios has written to the Court:

> I would like to add an additional statement to my 2255 that I believe added to my sentencing. [The Assistant United States Attorney] told Judge Singal that I had been charged with previous fraud however I was arrested in 2002 for credit ID theft, however that was dismissed and I was arrested for credit card $100-10,000 a felony in Shelby County, TN that was dismissed, however [the Assistant United States Attorney] continued to bring it up during sentencing. My attorney failed to object. I'm sorry I'm just a 23 year old kid I don't understand this legal stuff.

(Docket No. 16.) Because of the un-timeliness of this pleading, the United States has not had the opportunity to respond to this assertion; however, giving Stergios the benefit of the doubt, I consider this additional complaint apropos the AUSA's sentencing representations.

The same infirmity plagues both of Stergios's disagreements with the prosecutor's sentencing assertions. These are attacks on the sentencing proceedings that Stergios could have raised on his direct appeal but did not. Berthoff, 308 F.3d at 127-28.[3] Stergios's conclusory reference in his addendum to his attorney failure to object to the prosecutor's description of two previous fraud convictions does not meet his burden apropos demonstrating cause and prejudice.

---

[3] The United States speculates as to his form § 2255 complaint that Stergios is attempting to revisit a challenge to the denial of a United States Sentencing Guideline § 3E1.1 reduction and it argues, correctly, that Stergios cannot re-litigate via a 28 U.S.C. § 2255 motion a claim that was decided against him on direct appeal.

And as to the underlying merits of this due process ground, Stergios had ample opportunity to challenge the representations made in the Pre-sentence Investigation Report and at sentencing.  See United States v. Diaz-Villafane, 874 F.2d 43, 47 (1st Cir. 1989) (observing that a defendant must have "the requisite opportunity to (1) challenge the information contained in the PSI, (2) attempt to rebut the prosecution's version of the facts, and (3) cross-examine the government's witnesses") (footnote omitted).

Furthermore, the Assistant United States Attorney expressly noted to the court that all of the historical fraudulent conduct the Government was relying on and which was reflected in the criminal history portion of the Pre-sentence Investigation Report had not been reduced to a conviction.  (Sentencing Tr. at 28.)  And, as the United States observes, in declining to allow an acceptance of responsibility reduction this Court expressed its views that Stergios had persisted in blaming others for his conduct, including his mother, and had attempted to conceal or dissipate his assets to avoid restitution. ( Sentencing Tr. at 78-79.)  This Court "is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing."  United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

### 4.	The Affidavit of the Chief Financial Officer of Border Trust

Finally, in support of his fourth ground, Stergios presses a signed affidavit by the Chief Financial Officer of Border Trust which he claims proves that he is not factually guilty because it represents that the bank was never the victim or the intended victim and was never defrauded.  With regards to this ground and his failure to raise it on direct appeal, Stergios explains that he did not find the affidavit until October 2005.  (Stergios's appellate brief was filed on October 20, 2005.)

The affidavit reads:

I, <u>Earle F. Harvey</u>, am making this statement to Detective Martin Rinaldi of the Brunswick Police Department on January 9, 2004 regarding several fraudulent checks that have been written by three different identities over the last six months of 2003. The names are Charles Stergios, Thomas Brooks, and Draco Products. I serve as the Chief Financial Officer of Border Trust Company, a state chartered and FDIC insured commercial bank. I am aware of these fraudulent checks first appearing in May of 2003. This has been occurring since that time through December of 2003. An approximate total of the amount of bad checks written is as follows: Charles Stergios - $113,573.98, Thomas Brooks - $15,850.53, and Draco Products - $83,575.76. These amounts are approximate as there have been several checks intercepted in the check clearing process and were never presented on Border Trust for payment. It is safe to say that the actual amount is higher than the totals presented above.

The Checks that were fraudulently written with our company logo only required one signature for authentication, whereas an official Border Trust check requires two signers. Also, the quality of paper that was used in the bad checks was poor and generally not used by actual check printers, as this type of paper used in the fraudulent checks can lead to easier destruction when presented upon numerous banks for processing. Several different items have been purchased with these checks, as can be viewed by the attached documents from EBay. I have received dozens of calls from around the county on this matter and numerous individuals have suffered the loss of jewelry and other valuable collections. <u>Border Trust has not suffered a monetary loss as these checks were never valid enough to actually clear our system</u>; however, many hours have been spent on this issue since May of 2003.

(Docket No. 15) (emphasis added).

The United States responds:

This claim fails because it is in direct conflict with Stergios' own statements to the Rule 11 court. <u>See</u> <u>Ouellette [v. United States</u>,] 862 F.2d [371,] 374-375 [(1st Cir. 1988)]. The Information alleged:

Between about April of 2003 and continuing until about January of 2004, **Charles D. Stergios** did knowingly execute and attempt to execute a scheme to defraud Border Trust of South China, Maine, a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in that he forged checks purporting to be drawn on accounts at Border Trust and used those checks to pay for valuable merchandise he had

23

> bargained for over the Internet, knowing that those checks were
> worthless.
>
> Stergios himself told the Rule 11 court that he was guilty of the charges in
> the Information. Moreover, although he later changed his story, Stergios
> also admitted to the Probation Office that he had created the Border Trust
> checks. Finally, physical evidence seized from his home demonstrated that
> Stergios both manufactured the fraudulent Border Trust checks and also
> used them. Officers seized computer equipment used to produce the
> checks, checkwriting paper, and a fake check in the amount of $7,550.
> Thus, Stergios' claim that he is innocent of bank fraud should also be
> summarily dismissed.

(Mot. Dismiss at 26-27.)

Not much more needs to be added to this argument.  However, I do also note that the Prosecution Version is consistent with the affidavit relied on by Stergios, in that of the "fifty or more victims" who sold items as part of this scheme, it is evident that they were not able to clear the forged Border Trust checks.  (Docket No. 4.)  Thus, actual financial loss on the part of Border Trust was never part of the theory of the prosecution's case on the bank fraud count.

### Conclusion

As reasoned above, I recommend that the Court summarily dismiss Stergios's 28 U.S.C. § 2255 motion.

<u>NOTICE</u>

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

March 30, 2007.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge